# UNITED STATES v. ALABAMA GREAT SOUTHERN RAILROAD COMPANY.

## APPEAL FROM THE COURT OF CLAIMS.

No. 749. Submitted January 8, 1892. — Decided January 18, 1892.

When the Executive Department charged with the execution of a statute gives a construction to it, and acts upon that construction for a series of years, the court looks with disfavor upon a change whereby parties who have contracted with the government on the faith of the old construction may be injured; especially when it is attempted to make the change retroactive, and to require from the contractor repayment of moneys paid to him under the former construction.

The postal appropriation act of July 12, 1876, c. 179, fixed a rate of pay to railroads for carrying the mails, and provided that roads constructed in whole or in part by a land grant, conditioned that mails should be transported at a rate to be fixed by Congress, should receive only 80 per cent

of that rate.   As applied to a line of road a part of which only was constructed with such aid, the department held, and acted in accordance therewith for many years, that it was entitled to the percentage pay for the portion of the line so constructed, and to full pay for the remainder.   Subsequently, the Department reversed this construction, and claimed that the mails should be carried over the whole line at the reduced rate, and it accordingly withheld from sums due for current transportation not only the 20 per cent thereon, but a sufficient amount to settle claims for past transportation on that basis.   The railroad company sued to recover the pay withheld.   The Court of Claims gave judgment in its favor, and this court affirms that judgment.

THE court stated the case as follows :

This was a petition by the appellee to recover certain sums, amounting to $4620.74, alleged to be due it for the carriage of mails which had been deducted from what was claimed to be its proper compensation by the order of the Postmaster General.   There was also a counter claim by the United States for over-payments.   The facts found by the Court of Claims were substantially as follows :

Claimant is a corporation organized under the laws of Alabama, and operates a railroad running southwest from Chattanooga, Tennessee, to the southern boundary of Tennessee, across the northwestern corner of Georgia, and through the States of Alabama and Mississippi to Meridian in the latter State.   This road is 295.45 miles in length.   By the acts of June 3 and August 1, 1856, 11 Stat. 17 and 30, Congress granted certain public lands to the States of Alabama and Mississippi to aid in the construction of certain railroads in those States.   That part of the road now composing the line of this company, lying in the States of Alabama and Mississippi, 263.85 miles in length, was aided by this grant.   The construction of that part of the railroad lying in the States of Tennessee and Georgia was not aided by land grants from the United States, and is 31.6 miles in length, of which 5.7 miles is not owned by the claimant, but is operated under lease.   The United States mail was carried over this railroad from July, 1876, to July, 1880, by the Alabama and Chattanooga Railroad Company, and from the latter date to the present time

by the appellee, the Alabama Great Southern Railroad Company. By section 5 of the act of June 3, 1856, 11 Stat. 17, c. 41, making land grants to the State of Alabama in aid of certain railroads, it was enacted "that the United States mail shall be transported over said roads, under the direction of the Post Office Department, at such price as Congress may, by law, direct: *Provided,* That until such price is fixed by law, the Postmaster General shall have the power to determine the same." Section 5 of the act of August 1, 1856, making a similar grant to the State of Mississippi, was identical with this.

By the postal appropriation act of July 12, 1876, 19 Stat. 78, 82, c. 179, it was provided in section 13, "that railroad companies whose railroad was constructed in whole or in part by a land grant made by Congress on the condition that the mails should be transported over their road at such price as Congress should by law direct, shall receive only eighty per centum of the compensation authorized by this act."

In construing this section in connection with the transportation of the mails by the Alabama and Chattanooga Railroad Company, the Postmaster General decided that the section required that the reduced rate should be paid for carrying the mails only upon that part of its road which had been aided by the land grant, and that the full rate allowed to roads which had not been thus aided should be paid for the residue of this road. The railroad company was therefore paid upon this basis from July 1, 1876, to June 30, 1880. At this time, the railroad having passed into the hands of the appellee, payments to the Alabama and Chattanooga Company ceased. The same service, however, was performed by the appellee, and compensation was paid to it upon the same basis from July 1, 1880, to June 30, 1885. In August, 1885, the Postmaster General then in office reviewed the act of July 12, 1876, reversed the construction given to it by his predecessors, and decided that it required the payment of the reduced rate to the appellee over the whole of its line with the exception of the 5.7 miles operated under lease. This construction was given not on account of any mistake of fact in the original

orders under which payment had been made, but upon the ground of a supposed error of law in the interpretation of section 13. He gave to his opinion both a prospective and a retroactive effect, and ordered, first, that all future payments should be made on the reduced basis; and, second, that an account should be taken of all payments made by his predecessors since July 1, 1876, for mail service over this road in excess of the rate he held to be proper, and that this sum should be withheld from the amount due to the claimant.

Upon this state of facts the Court of Claims gave judgment for the appellee, both for the amount withheld for services prior to the revised construction of the law, and for the amounts becoming due subsequent to such construction.

The opinion of the court is reported in 25 C. Cl. 30. From the judgment thus rendered the United States appealed to this court.

*Mr. Assistant Attorney General Parker* for appellant.

No one disputes or questions that the railroad line of claimant was constructed in part, and in the main, by land grants made by Congress, on the condition specified.

It therefore follows, of necessity, that claimant has no standing to make any contention in the premises against the 20 per cent deduction made because of the act of Congress of 1876, and because of the land grants it had received with the condition attached thereto.

It is understood· that the opinion below admits that the literal import of the language inclines to a conclusion adverse to the claimant.

The court then seeks to strengthen its position by an imagined case, or combination of cases, saying that " in the consolidation and extension of our. railroad systems it may easily be that a company with a thousand miles of track has absorbed a land grant of 50 miles, and it can hardly be supposed that Congress intended to reduce the compensation on 950 miles of track to 80 per cent, while alongside of it a rival road of a thousand miles is to receive 100 per cent."

It cannot be claimed that the courts may change the laws

because cases of hardship may arise under enactments as they are left by Congress.

As no such cases as those suggested above have existed it may be fairly inferred that both railroads and Congress may be trusted to prevent the existence of the unreasonable consequences supposed by the court below.

It must be conceded that the language employed by Congress is neither ambiguous nor obscure, and also that its fair and natural import is to render this whole line from Wauhatchie to Meridian a land-grant road, subject to the 20 per cent reduction as to mail compensation.

*Mr. M. D. Brainard, Mr. Charles King* and *Mr. William B. King* for appellee.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

This case depends upon the construction to be given to section 13 of the act of July 12, 1876, which reads as follows: " Section 13. That railroad companies whose railroad was constructed *in whole or in part* by a land grant made by Congress on the condition that the mails should be transported over their road at such price as Congress should by law direct, shall receive only eighty per centum of the compensation authorized by this act." As it is admitted that the construction of so much of this road as lay within the States of Alabama and Mississippi, amounting to 263.85 miles, was aided by the proceeds of lands granted by the acts of Congress of June 3, 1856, 11 Stat. 17, c. 41, and August 11, 1856, 11 Stat. 30, c. 83, and the residue of such road lying within the States of Tennessee and Georgia, amounting to 31.6 miles, was constructed without such aid, the question is presented whether the government is entitled to the transportation of the mail over the whole of such road at eighty per cent of the compensation provided for roads which have received no aid from Congress, or whether such percentage applies only to so much of the road as lies within the States of Alabama and Mississippi.

The difficulty arises from the fact that, by section 13, above

quoted, all roads "constructed in whole or in part" by Congressional land grants are bound to carry at the reduced rates. These words, however, are susceptible of several constructions. They may mean such roads as received grants of land the proceeds of whose sale were sufficient to pay the entire or only the partial cost of their construction. In this case the language would be confined to the linear parts of such roads as receive the aid of the land grants, — in the case under consideration, only that part of the road lying in Alabama or Mississippi. Or they may mean that railroads, any linear part of which received the aid of a land grant of Congress in its construction, should be bound to carry the mails at a reduced rate over the entire line. This, which is doubtless the literal reading of the statute, supports the contention of the government in this case. As applied to the particular facts of the present case, this interpretation of the statute would work no great hardship, since the unaided part of the road was but little more than ten per cent of the entire line; but, if the case were reversed, and the aided part amounted only to ten per cent of the entire road, it would be equally within the words of the statute, and the injustice of the construction would become clearly apparent, especially in the case put in the opinion of the learned judge of the court below, if there were a parallel rival road, unaided by a Congressional grant, receiving the full compensation allowed by law. It would also result from this, that if there were two separate roads forming a continuous line, one of which was aided and the other unaided by a land grant, each receiving its appropriate compensation, and these roads were subsequently consolidated, the aided portion would draw after it its own compensation at the reduced rate, and would compel it to be applied to the whole line.

But these words are still susceptible of a third construction, viz., that any railroad the entire line of which or only certain linear portions of which had been constructed by a Congressional land grant, should receive the reduced rate properly proportioned to the part which had received such aid; and that, as to the unaided portion, it should receive the full com-

pensation allowed by law. This was the construction given to it by the Postmaster General and by the accounting officers of the Treasury at the time the act was passed, and the Alabama and Chattanooga Railroad Company and its successor, the appellee, was, and continued to be, paid upon that basis from 1876 to 1885, by six Postmasters General, when in 1885, the then incumbent of the office reversed the rulings of his predecessors, and not only subjected the entire line to the reduced rates, but made such construction retroactive, and enforced repayment of what the road had for nine years received under the prior construction.

We think the contemporaneous construction thus given by the executive department of the government, and continued for nine years through six different administrations of that department — a construction which, though inconsistent with the literalism of the act, certainly consorts with the equities of the case — should be considered as decisive in this suit. It is a settled doctrine of this court that, in case of ambiguity, the judicial department will lean in favor of a construction given to a statute by the department charged with the execution of such statute, and, if such construction be acted upon for a number of years, will look with disfavor upon any sudden change, whereby parties who have contracted with the government upon the faith of such construction may be prejudiced. It is especially objectionable that a construction of a statute favorable to the individual citizen should be changed in such manner as to become retroactive, and to require from him the repayment of moneys to which he had supposed himself entitled, and upon the expectation of which he had made his contracts with the government. These principles were announced as early as 1827 in *Edwards' Lessee* v. *Darby*, 12 Wheat. 206, 210, and have been steadily adhered to in subsequent decisions. *United States* v. *State Bank of North Carolina*, 6 Pet. 29, 39; *United States* v. *Macdaniel*, 7 Pet. 1; *Brown* v. *United States*, 113 U. S. 568; *United States* v. *Moore*, 95 U. S. 760, 763.

The construction we have given to this act is also in harmony with that given to the Pacific Railroad Act of 1862 in *United*

*States* v. *Kansas Pacific Railway Co.*, 99 U. S. 455, and the Thurman Act of May 7, 1878, in *United States* v. *Central Pacific Railroad Company*, 118 U. S. 235.

There was no error in the judgment of the Court of Claims, and it is, therefore,

*Affirmed.*