Campbell, Chief Justice,
reviewing the facts found to be established, delivered the opinion of the court:
The plaintiff brings this suit to recover certain drawbacks claimed to be due on account of the exportation of cigarettes manufactured from the clippings or scraps of Sumatra tobacco which had been imported, and upon which the duty required by law had been paid.
The statute under which the drawback is claimed is section 80 of the act of July 24, 1897, 30 Stat., 211, and the act of August 5, 1909, 86 Stat., 11. This statute provides:
“That where imported materials on which-duties have been paid are used in the manufacture of articles manufactured or produced in the United States, there shall be allowed on the exportation of such articles a drawback equal in amount to the duties paid on the materials used, less one per centum of such duties: Provided, That when the articles exported are made in part from domestic materials the imported materials, or the parts of the articles made from such materials, shall so appear in the completed articles that the quantity or measure thereof may be ascertained: *89 And provided further, That the drawback on any article allowed under existing law shall be continued at the rate herein provided. That the imported materials used in the manufacture or production of articles entitled to drawback of customs duties when exported shall, in all cases where drawback of duties paid on such materials is claimed, be identified, the quantity of such materials used and the amount of duties paid thereon shall be ascertained, the facts of the manufacture or production of such articles in the United States and their exportation therefrom shall be determined, and the drawback due thereon shall be paid to the manuracturer, producer, or exporter, to the agent of either or to the person to whom such manufacturer, producer, exporter, or agent shall in writing order such drawback paid, under such regulations as the Secretary of the Treasury shall prescribe.
The plaintiff, or one of its subsidiaries, imported Sumatra tobacco, from which cigar wrappers were made, which left clippings, or scraps, including imperfect leaves, not suitable for cigar wrappers, and these were manufactured into cigarettes by the plaintiff for exportation, and were subsequently exported. The plaintiff called upon the Secretary of the Treasury to fix the amount of the drawback allowable on account of the exportation of these cigarettes, made, as stated, from tobacco upon which the duty had been paid. After an investigation and ascertainment of the facts, the Treasury Department promulgated a decision, known as Treasury decision 29462, referring to drawback on cigarettes manufactured by the American Tobacco Co. with the use of imported leaf tobacco. This decision was rendered on January 8, 1909, and provided that a drawback would be allowed equal in amount to the duty paid on the imported tobacco used, less the legal deduction of 1 per cent. After this decision was promulgated, a number of drawbacks were paid on account of the cigarettes, but later, in December, 1909, the payment of the drawbacks was suspended, and finally, in December, 1911, Treasury decision 29462 was revoked by an order issued at that time. The plaintiff sues for drawbacks alleged to have accrued while Treasury decision 29462 was in force.
There is no question under the facts that the amount of the drawback claimed is the correct amount if Treasury de- *90 cisión 29462 be applied, except a portion of the claims which, in any event, are barred by the statute of limitations of six years, suit having been brought in this court on the 13th day of January, 1916.
The defendant interposes a defense that goes to the merits of the claim. That defense is that the Secretary of the Treasury had no right to establish the drawback fixed by Treasury decision 29462, and that he should have established a drawback, if any were allowable, upon the relative-value basis. The statute provides that the Secretary shall prescribe regulations under which there shall be (1) an identification of the imported materials used in the manufacture, (2) the ascertainment of the quantity of such materials used and the amount of duties paid thereon, (3) the determination of the facts of the manufacture of such articles in the United States and their exportation, and, further, that the drawback due thereon shall be paid to one or another of designated persons.
The Government insists that the Treasury decision under which the drawbacks are here claimed was erroneously or illegally made, because the defendant urges that there had been a uniform custom in the Treasury Department to fix the drawback on the relative value basis of the article exported. The fact is, however, that the Treasury Department did promulgate the decision relied upon by the plaintiff. Nor does it definitely appear that it was an unbroken practice of the department to do otherwise. It must be conceded that the statute does not in terms direct the adoption of the relative-value basis, and it may be conceded that the act left it open in proper cases for the department to prescribe the regulations under which the relative-value basis or the basis of the actual duty paid should be applied.
The facts in the instant case show that Sumatra leaf tobacco was imported. A part of this leaf tobacco was used in making cigar wrappers, a part, being clippings or imperfect leaf that were not suited for cigar wrappers, was used in the manufacture of cigarettes, and another part, namely, the stems, was used for some distinct purpose and had small value. That part which was used in cigarettes was subsequently exported, and the question is, What is the amount *91 of drawback payable under the statute ? There would be no question that if all of the Sumatra tobacco upon which the duty was paid had been exported in the shape of a manufactured article “ a drawback equal in amount to the duties paid on the materials use, less 1 per centum of such duties,” would have been payable. And it is equally true that if the cigars into which the most valuable part of the imported tobacco had gone had been exported, the same rule would have been applicable, because the statute authorizes such drawback, where imported materials “ are used in the manufacture of articles ” subsequently exported, and provides that the amount of the drawback shall be equal to the duties paid on the materials used, less 1 per cent. The clippings or parts of leaves which went into the manufacture of the cigarettes was a part of the Sumatra leaf upon which the duty was paid and furnished a part of the weight of that leaf which determined the amount of the duty. When those clippings and imperfect leaves were used in the manufacture of cigarettes and exported, there seems to be no good reason for holding that their weight should not be considered and that their relative value only should be taken, notwithstanding that their weight alone was considered when the original duty was paid, and they were given as much value then as the wrappers themselves, so far as the duty was concerned. The use of these clippings in the cigarettes was not the creation of a by-product from the tobacco, but was the use of a part of the identical article which had paid the import duty, and the statute provides that upon the use of an imported article and its exportation a drawback shall be allowed equal in amount to the duties paid on the material. We think the facts distinguish this case from Dean Linseed Oil Co. case, 87 Fed., 455. Particularly, we think, must this be true where the department has fixed the rate and importation and exportations were made thereafter. If it be conceded that the rate could be changed by the department, as it was subsequently changed, we think it should not be given a retroactive effect as against the party entitled to the drawback. A. G. S. Railroad Co. case, 142 U. S., 615, 621.
Another question is raised upon the right of the plaintiff to recover, it being insisted that under the regulations of the *92 Treasury Department the suit could only be maintained by Comstock and Theakston, to whom was transferred the bill of lading, and who made the claim for drawback in conformity with the regulations. The plaintiff asked leave to make Comstock and Theakston parties, and this motion is resisted by the defendant upon the ground that if the plaintiff is not the proper party plaintiff, nor the one legally entitled to receive the drawback from the Government, then its petition should be dismissed, and that it is not allowable to bring in new parties to prosecute the case; that, as to them, it Avould be barred by the statute of limitations, which in this court is jurisdictional. We agree with the defendant’s contention in this regard, but we think the facts sufficiently show that the party entitled to the drawback is the plaintiff, and that while Comstock and Theakston were the agents to whom payment would be made of the drawback under the regulations of the department, that condition does not prevent the real party in interest from prosecuting the suit in this court. Comstock and Theakston were the agents of the plaintiff, and if they had received the drawback they would have accounted to plaintiff therefor. We think the plaintiff is entitled to maintain this suit as the real party in interest. A part of the claim is barred by the statute of limitations. Kennedy's case, 79 Fed., 893.
Judgment will accordingly be given for $30,009.20, being the amount of the drawbacks which accrued under Treasury decision 29462 prior to its revocation, and within six years prior to the bringing of this suit.
Judge Hay, Judge DowNEY, and Judge Booth, concur.