## BETHLEHEM SHIPBUILDING CORPORATION, Limited, v. WEST & DODGE CO.

(Circuit Court of Appeals, First Circuit. December 1, 1920.)

No. 1467.

1. United States ☞73—Provision of Naval Appropriation Act as to prices to be paid for material held not to relate to prices to be paid by a contractor.

The provision of Naval Appropriation Act March 4, 1917, authorizing the Navy Department to build or contract for the building of vessels, that "no purchase of structural steel, ship plates, or machinery shall be made at a price in excess of a reasonable profit above the actual cost of manufacture," applies only to purchases made by the government, and has no relation to prices to be paid by a contractor with whom the department has contracted for the construction of vessels.

2. Statutes ☞219—Construction by executive department followed.

The courts will follow the construction placed upon a doubtful act of Congress by the departments charged with its execution.

3. United States ☞70(1)—Contract for building of naval vessels construed.

Under a contract with the Navy Department for the construction of 40 destroyers on a cost plus profit basis, providing that prices paid by the contractor for materials, machinery, and equipment should be subject to, approval of the Compensation Board created by the department, where the contractor contracted for oil burners for the 40 vessels at a price approved by such board, and the oil burners had been made and delivered, and most of them paid for, the contractor *held* not relieved from liability for the remainder of the contract price, in the absence of fraud, because the Compensation Board, a year after its approval of the price to be paid, withdrew such approval and fixed a substantially lower price.

In Error to the District Court of the United States for the District of Massachusetts; James M. Morton, Judge.

Action at law by the West & Dodge Company against the Bethlehem Shipbuilding Corporation, Limited. Judgment for plaintiff, and defendant brings error. Affirmed, subject to right of defendant to amend answer.

For opinion below, see 266 Fed. 557.

Frederic B. Greenhalge, of Boston, Mass. (William J. Nolan and Currier & Young, all of Boston, Mass., on the brief), for plaintiff in error.

Ralph M. Smith and Charles F. Choate, Jr., both of Boston, Mass.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

(Charles P. Curtis, Jr., of Boston, Mass., on the brief), for defendant in error.

Pickens Neagle, of Washington, D. C., Acting Sol. of Navy Department, amicus curiæ.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. Judgment was rendered against the plaintiff in error, hereinafter called the defendant, in the District Court of the United States for the District of Massachusetts, in an action brought against it by the defendant in error, hereinafter called the plaintiff, to recover the price which had been fixed by the Compensation Board of the Navy Department for oil burners, oil burner cones, and oil burner holders for five torpedo boat destroyers which had been delivered in accordance with the defendant's order. The plaintiff filed a demurrer to the defendant's answer, which was sustained by the District Court, and this is assigned as error.

The following facts are admitted by the answer:

The defendant, on the 6th day of December, A. D. 1917, entered into a written contract with the United States to construct for it 40 torpedo boat destroyers at San Francisco and Alameda, Cal.

The contract was authorized by the Naval Appropriation Act of March 4, 1917 (39 Stat. 1195), and by the Urgent Deficiency Act of October 6, 1917 (40 Stat. 345). The former act contains the following provision:

"No purchase of structural steel, ship plates, or machinery shall be made at a price in excess of a reasonable profit above the actual cost of manufacture."

The contract provided that the government should pay for the vessels upon a cost plus profit basis, but that the total profit to be paid to the defendant for each boat was not to exceed $135,000, if its actual cost should equal or exceed the estimated cost of $1,500,000, and should the actual cost be less than the estimated cost the defendant was to be allowed as his profit, in addition to $135,000 on each boat, one-half the amount by which the actual cost of each fell short of the estimated cost.

It also provided that a compensation board, created by the Navy Department, should ascertain, estimate, and determine the actual cost of each boat, and that it should also approve orders, prices, and awards made by the defendant for materials, machinery, and equipment under the following provision:

"The contractor shall use every endeavor to obtain the materials, machinery, equipment, appurtenances, supplies, etc., under this contract at the lowest possible prices, and shall in no case knowingly pay higher prices than required by the existing market conditions nor higher prices than are or would be paid for similar materials, etc., purchased at the same time and under like circumstances and conditions for other work in progress in the yard. Specifications and guaranties of all materials, machinery and equipment, and the agreements under which such are purchased shall be subject to the approval of the department, and orders, prices, and awards shall be subject to the approval of the Compensation Board."

Another provision authorized the contractor to place special contracts for any parts or materials on a cost plus profit basis.

The defendant ordered from the plaintiff oil burners, oil burner air cones, and oil burner holders at the price of $3,350 per boat, "subject to the approval of the Compensation Board."

The Compensation Board took up with the plaintiff the matter of price, and procured a reduction from $3,350 to $3,223 per boat, and upon April 13, 1918, sent the following communication to the defendant:

"April 13, 1918.

"To Bethlehem Shipbuilding Corporation, Fore River Plant, Quincy, Mass. "Subject: Purchase Order F–1211–17 on West & Dodge for Oil Burners.

"1. It being understood that the subcontractor is willing to accept a price of $3,223 per boat for oil burners covered by the above order, this office herewith gives formal approval of the above order at that price, $3,223 per boat.

"W. R. Main, by direction."

On April 16, 1918, the defendant sent the following communication to the plaintiff:

"April 16, 1918.

"West & Dodge Company, 167 Oliver Street, Boston, Mass.—Gentlemen: We are pleased to advise you that we are authorized to make final award of Union Plant's purchase order F–1211–17 by the Compensation Board, Navy Department, Washington, D. C., and that you may proceed with this order at $3,223.00 per boat.

"Very truly yours,          Bethlehem Shipbuilding Corp'n, Ltd.<br>"By H. P. Readmon, Acting Purchasing Agent."

The plaintiff delivered to the defendant the oil burners, oil burner cones, and oil burner holders called for by the above order for 40 destroyers, and was paid by the defendant for all that it furnished for 35 at the price which had been approved by the Compensation Board.

On or about March 1, 1919, subsequent to the delivery by the plaintiff of the oil burner equipment for all the destroyers, and the payment by the defendant for all that had been furnished for 35, the defendant was notified by the Navy Department that it had investigated the plaintiff's cost of manufacturing this oil equipment, and that the price of $3,223 per boat was in excess of a reasonable profit above its cost, and that it rescinded its approval of this price, and gave its approval for the price of $1,915 per boat, plus the sum of $267.95, the cost of certain bronze castings for each.

In substance the answer sets up as a defense that, because the government's contract with the defendant was made under the act of Congress of March 4, 1917, the subcontract made by the defendant with the plaintiff is subject to the provision in that act which has been quoted; and, although the subcontract was not expressly made upon a cost plus profit basis, as the defendant had a right to make it, if authorized by the department under the terms of the defendant's contract, yet it was impliedly made upon this basis, and it alleges upon information and belief, afforded by the notice of the department, that the price of $3,223 per boat was in excess of a reasonable profit above the actual cost to the plaintiff for the manufacture of said oil burner equipment and that the price of $1,915 per boat, plus $267.95, the cost of bronze

castings per boat, would yield at least a reasonable profit above the cost to plaintiff for the manufacture and delivery thereof; that the alleged contract is illegal and of no force and effect; that, as it has already paid the plaintiff the sum of $112,805, and the whole cost for the oil burner equipment for the 40 torpedo boats, plus $267.95, the cost of bronze castings per boat, was only $87,318, on the basis of $1,915 for the oil equipment per boat, as fixed in the order of the Compensation Board rescinding its former approval, it owes the plaintiff nothing.

[1] The questions raised and which have been argued are: First, whether, because of the provision in the act of Congress of March 4, 1917, the contract between the plaintiff and the defendant was impliedly upon a cost plus profit basis, or a contract between the defendant and plaintiff under the quoted provision of the defendant's contract, which contemplates the purchase of material, subject to approval as to terms and specifications by the department and as to prices and awards by the Compensation Board. Second, whether, after the price at which the plaintiff should furnish the oil burner equipment for the 40 torpedo boat destroyers had been approved by the Compensation Board, and the plaintiff had furnished all the contract called for, this board could reconsider its former approval and fix a lower price, which would be binding upon the plaintiff, in the absence of any allegation of fraud or false representation on its part.

The Naval Appropriation Act of March 4, 1911 (36 Stat. 1289), contained the same provision as that found in the act of March 4, 1917, and in reply to a letter from the Secretary of the Navy asking for a confirmation of his impression that this provision in the act of 1911 did not apply to the purchase of structural steel, etc., which was made by a contractor, the Attorney General of the United States stated:

"The provision of the statute in question only applies to 'the purchase of structural steel, ship plates, armor, armament or machinery from any persons, firms or corporations,' etc. The subject being dealt with is the purchase by the government of structural steel, etc., from persons, firms, or corporations, and, of course, the purchase pursuant to the provision of law. The statute does not concern itself with the purchase of materials, etc., by those persons, firms, or corporations referred to in the statute from others with whom they may deal. I therefore confirm your impression that it is only purchases made directly by the department itself which are comprehended within this provision." 29 Opinions of Attorneys General, 44.

The Navy Department accepted this construction of this provision of the act and has acted in accordance with it.

[2] It has been repeatedly held that the courts will follow the construction placed upon a doubtful act of Congress by the departments charged with its execution. See Brown v. United States, 113 U. S. 568, 5 Sup. Ct. 648, 28 L. Ed. 1079; United States v. Alabama, etc., R. R. Co., 142 U. S. 615, 621, 12 Sup. Ct. 306, 35 L. Ed. 1134; United States v. Moore, 95 U. S. 760, 24 L. Ed. 588; Hahn v. United States, 107 U. S. 402, 2 Sup. Ct. 494, 27 L. Ed. 527. We think this construction is right, and that this provision of the act cannot be read into the contract between the plaintiff and the defendant.

The defendant in its brief does not seriously contest this construction, but claims that, in the matter of the purchase from the plaintiff,

the defendant acted as the agent of the United States. We cannot accept this view.

[3] The contract in terms provides that the defendant shall act as agent for the department in the making of improvements and providing additional facilities at the Risdon Iron Works and also that it should act as the agent of the United States in purchasing steel castings from the Columbia Steel Company, and also in contracting with the Worthington Pump & Machinery Corporation for pumps needed for the vessels; but it does not provide that the defendant shall act as the agent of the government in the purchase of other materials, machinery, and equipment.

As to these, the contract provides that the defendant may make subcontracts for their purchase upon a cost plus profit basis, with the approval of the department, or that they may be purchased subject to the approval of the department as to specifications and guaranties and as to price by the Compensation Board.

With the approval of the Navy Department the defendant ordered the oil burners and equipment of the plaintiff and submitted the order, together with the price to be paid, for the approval of the Compensation Board, as required by its contract. This board took up the matter of price with the plaintiff and secured a reduction in the price quoted by the plaintiff from $3,350 to $3,223 per boat, and the Compensation Board thereafterward gave its formal approval of that price and of the order, of which the plaintiff was notified by the defendant.

There is no allegation in the answer that there was any fraud practiced by the plaintiff or any false representations made by it which induced the Compensation Board to give its formal approval of the price of $3,223 per boat. The plaintiff had a right to rely upon the price which was approved by the board and to undertake the fulfillment of the contract with the understanding that the price which had been approved should be paid to it. The oil burners and the oil burner equipment had been delivered by the plaintiff for all the 40 torpedo boat destroyers, and nearly a year had elapsed since the Compensation Board had approved the price fixed in that contract before the plaintiff was notified that the department had rescinded its formal approval and fixed a largely reduced price from that on which the plaintiff had a right to rely when it furnished the equipment; but the obligation of the defendant had become fixed, and, in the absence of any allegation of fraud or false representation, we see no reason why it should not be bound by it; nor do we think such action of the department can change its obligation.

While the United States is not a party to this action, the Navy Department, through its solicitor, was heard by us in argument and has filed a brief. The substance of the contentions made is that the United States is interested in this controversy, because of the possible bearing of the judgment against this defendant upon claims presumably to be made by the defendant against the government for reimbursement in full. Among other statements made in the brief is the following:

"If the government is denied the right of inquiry and revision, if necessary, on the ground that it has once approved the price, we would be led to the in-

admissible proposition that a wily, unprincipled contractor, that could once get a dishonest price approved on any sort of false representation, would be immune, and his robbery would have the sanction of law."

It is hardly necessary to observe that, if the department is correct in its contention that the approval of the Compensation Board was grounded upon misrepresentations erroneously or fraudulently made by the plaintiff, and the defendant has failed to set up in its answer all defenses fairly open to it, a judgment against it cannot be the ground of any valid and enforceable claim by it against the government. We think, therefore, that leave should be given to the defendant, if it so elects, to amend its answer. Without such amendment, the judgment below must be affirmed.

The judgment of the District Court is vacated, and the case is remanded to that court for further proceedings not inconsistent with this opinion, with costs to the defendant in error.