## HOAGUE–SPRAGUE CORPORATION v. FRANK C. MEYER CO., Inc.

District Court, E. D. New York. May 28, 1928.

1. Copyrights ⊜82—Failure of complaint for infringement of copyright to allege that label relied on was original work, or contained copyright subject-matter, held not fatal (Equity Rule 25).

Complaint for infringement of copyright, setting forth that the label relied on was published with copyright notice and that plaintiff had complied with existing acts of Congress, was not fatally defective for failure to allege that the label registered contained copyright subject-matter, or was an original work, in view of Equity Rule 25.

2. Copyrights ⊜29—Copyright must be obtained for print alleged to have been infringed, whether commercial or art print, and prints must be marked (Copyright Law [17 USCA §§ 1–63]).

To obtain relief for alleged infringing use of plaintiff's print under Copyright Law (17 USCA §§ 1–63), there must be a copyright obtained whether the print is a commercial or purely art print, and all prints must be so marked; a "copyright" being an act by the government granting a certain monopoly to a person who has exercised his ability.

[Ed. Note.—For other definitions, see Words and Phrases; First and Second Series, Copyright.]

3. Copyrights ⊜83—Copyright carries with it presumption that law creating it has been complied with (17 USCA §§ 1–63).

While copyright depends on observance of the law creating it under 17 USCA §§ 1–63, it is a grant by the government, and, when granted, carries with it the presumption that the law has been complied with.

4. Copyrights ⊜2—Various sections of Copyright Law must be reconciled, if possible, in absence of direct repeal (17 USCA §§ 1–63).

The court, in absence of direct repeal, must reconcile, if possible, the various sections of Copyright Law (17 USCA §§ 1–63).

**5. Statutes ⬅︎158—Repeal by Implication should be avoided, if possible.**

Whenever possible, the repeal of a statute by implication should be avoided.

**6. Statutes ⬅︎219—Statute should not be construed contrary to official construction given over long period, in absence of cogent reasons.**

Where statute has been uniformly construed by government officials and persons acting under it for long period, contrary construction should not be given it by the courts, in absence of cogent reasons.

**7. Copyrights ⬅︎2—Statute requiring registry of commercial labels in Patent Office under Copyright Law held not repealed by subsequent statutes requiring filing of papers with Register of Copyrights; "conflict" (17 USCA §§ 4, 5, 10, 63).**

Act June 18, 1874, § 3 (17 USCA § 63), providing for registration of prints and labels under the Copyright Law by the Commissioner of Patents, held not repealed by Act March 4, 1909 (17 USCA §§ 1–62), notwithstanding 17 USCA §§ 4, 5, 10, providing that copyright shall be evidenced by registration granted in office of Register of Copyrights, in view of rule that repeal by implication is not favored, and practical construction of statute, under which prints and labels were registered in the Patent Office over long period; "conflict," in section of statute, meaning incompatibility, and indicating absolute inconsistency.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Conflict.]

**8. Copyrights ⬅︎28—Failure of applicants to file commercial prints in office of Register of Copyrights held not to invalidate copyright, where papers were filed in Patent Office (17 USCA §§ 1–63).**

Applicant for copyright on commercial prints was not required to file copyright papers with Register of Copyrights as condition to validity of copyright, where prints were registered under supervision of Commissioner of Patents, under 17 USCA § 63; such section not being impliedly repealed by subsequent Act March 4, 1909 (17 USCA §§ 1–62).

**9. Copyrights ⬅︎85—Manufacturer of cardboard boxes, securing copyright on labels placed thereon, held entitled to preliminary injunction against use thereof by defendant producing similar labels, by cheaper and inferior process (17 USCA §§ 1–63).**

Manufacturer of cardboard boxes for shoe trade, procuring copyright on commercial prints or labels used on the boxes, *held* entitled to preliminary injunction to restrain use of label copied therefrom by defendant and put out by cheaper and inferior process, under 17 USCA §§ 1–63).

In Equity. Suit by the Hoague-Sprague Corporation against the Frank C. Meyer Company, Inc. On plaintiff's motion for a preliminary injunction, and defendant's motion to dismiss the bill of complaint. Motion to dismiss bill denied, and motion for preliminary injunction granted on filing bond.

Fish, Richardson & Neave, of Boston, Mass. (A. D. Salinger and Hector M. Holmes, both of Boston, Mass., of counsel), for the motion.

Dyke & Schaines, of New York City (H. H. Dyke, of New York City, of counsel), opposed.

INCH, District Judge. Plaintiff has sued defendant for alleged violation of plaintiff's copyright, and in said suit now makes this motion for a preliminary injunction. The defendant, in addition to the opposing of this motion of plaintiff, moves to dismiss the complaint, on the ground that, as a matter of law, the alleged copyright of plaintiff is invalid.

[1] At the outset there is another point for dismissal, made by the defendant, which should be mentioned. The complaint sets forth that the label in suit was designed for hire by a designer, and was thereupon published with a copyright notice. It also sets forth that the plaintiff has complied with the existing acts of Congress. The defendant charges that this is entirely inadequate; that the complaint should contain an allegation, in order to make it sound, that the label registered contains copyright subject-matter or is original work such as would constitute same.

The plaintiff asks leave to amend its complaint, should the court feel that this is a defect fatal to the complaint. In my opinion, while it would not be out of place to make the allegation, it does not seem to me that its absence, in view of equity rule 25, constitutes a material defect. The objection of the defendant is overruled, and motion denied.

Plaintiff is a manufacturer of cardboard boxes. It deals largely with the shoe trade. Its principal office is in Lynn, Mass., while it has factories in that city, and in Beverly, of that state, and in Brooklyn, N. Y. These boxes are ordinarily made of cardboard and are what are known as shoe boxes, with removable cover, to fit the open top. Plaintiff makes these boxes and sells them to shoe manufacturers. These shoe manufacturers, in turn, deliver shoes made by them, and placed in such boxes, to their retailers and distributors.

Up to about a year ago most all such shoe boxes were plain, and simply bore a label, pasted on one end, bearing a name of the retail shoe merchant, or some other design. There were also, occasionally, ordered boxes

which were covered with colored paper; also certain shoe retailers and distributors insisted on boxes bearing a paper wrapping of special design, as distinguished from the plainly wrapped box, above mentioned.

The plaintiff, when called upon to supply boxes requiring a wrap of any special design, would go out and buy the necessary wraps from makers or printers, and cover the boxes according to the order. The defendant is in the same sort of business as plaintiff. I have no doubt as I read the papers before me, that there has been considerable business rivalry between these concerns, with the usual charges and counter charges.

Along in the spring of 1927, plaintiff felt that there was a real demand for a special wrapped box, one having a fanciful design of decorative character. This demand would meet the requirements of plaintiff's customers, as reflected in the constant demand to it, of various retail stores, for a shoe box, not only a container, but attractive as a decoration, in a store window, and useful as an advertising medium. This demand is prominent in the trade to-day.

Accordingly, in the spring of 1927, and in accordance with the demand, plaintiff made arrangements with a lithographing company to have one of its artists make one or more preliminary sketches, in the form of a hand-painted sketch, and in shape of a dummy box form, and when this artist's sketch had been approved by the retailer or shoe manufacturer, for whose shoe boxes it was designed, an estimate would be taken from such retailer or manufacturer, and an order placed with the lithographing company, to lithograph in final form a complete wrap of the approved design. This particular sketch, in the form of a complete wrap, was then submitted, for final approval, to the retailer. It contained the notice, shown in Exhibit 3, which, in substance, states that it is a finished shoe box of plaintiff's, and was an exact copy of the sketch; that it was hand-drawn proof, and the only wrap in existence, etc. A space was left for the customer's approval and the number required. When the proof was returned, with the necessary information, plaintiff then ordered same from the lithographing company.

Since May, 1927, plaintiff has, in this way, supplied specially designed box wraps of over 142 different kinds, and states that it has over 200 different specially designed wraps now in process of being designed and sold. By arrangement with this lithographing company, the plaintiff paid all the expense of making these design sketches, as well as of the cost of preparing and lithographing said final proof, and, in return, owned all the proprietary rights in the finished design and sketch, by way of copyright or otherwise.

All of this ran into money. The cost has varied from $150 to $675 for a single design; the average cost being about $300. The above is sufficient to outline the business of plaintiff.

It appears that, in the summer of 1927, the Royal Shoe Store became interested in having plaintiff create and make for them one of these specially designed wraps or labels. Plaintiff thereupon, at its own expense, had the lithographing company instruct one of its artists to design a wrap and label. This artist was Elmer Crowell. Mr. Crowell is an artist by profession, residing in Boston, Mass. He created and executed a hand-painted sketch of the design. This is the object of the suit by plaintiff against the defendant. It is shown by the wrapper attached to the affidavit of Crowell, marked Exhibit 9, and the box wrapper attached to the complaint.

Mr. Crowell states that the proprietary right, by the way of copyright or otherwise, was, by agreement, not one belonging to him, but was at the disposition of the lithographing company. The lithographing company, as I have already said, in turn has transferred all these rights to plaintiff.

The hand-painted sketch of Crowell met with the approval of the Royal Shoe Store. It, together with the notice mentioned, was returned by them to plaintiff, with approval, together with an estimate of the annual requirement of 25,000, women's sizes. Thereupon plaintiff ordered, from the lithographing company, approximately this number of labels. All such labels, had in the meantime, been duly copyrighted.

Plaintiff had filed its application in the Patent Office for the registration of such copyright, for the specially designed label in suit, and on February 14, 1928, a certificate of registration, No. 33,440, had been duly issued to plaintiff by the Patent Office. The file wrapper of this registration, Exhibit 7, and a certified copy of the registration, Exhibit 8, is part of the moving papers.

According to the affidavits submitted, the Royal Shoe Store therefore urged the plaintiff to fill the order as soon as possible, and in January, 1928, a representative of the Royal Shoe Store called on plaintiff at Lynn, Mass., and obtained a number of boxes, covered with the wrapper, stating that he desired to deliver them to various shoe manufacturers, as a box in which shoes should be delivered to the Royal Shoe Store. These sample boxes were so delivered, each bearing

plaintiff's copyright notice. It further appears that shortly thereafter the defendant commenced to make and sell these identical wraps. They were produced, however, by what is termed "letter press printing," a reproduction inferior in many respects and very much cheaper in cost.

What has occurred, therefore, is that defendant has deliberately copied, and made by a much cheaper and inferior process, the sketch of Mr. Crowell, although same was protected by the copyright, and by underselling the plaintiff, completely ended plaintiff's ability to sell this product, all with resulting damage to plaintiff.

The defendant urges a number of objections. These are that there has been no adjudication of the validity of this copyright; that the defendant is substantial and able to respond in damages; that the wrapper in question is substantially no more than a duplication of the Royal Shoe Store's trademark, which is not copyrightable; that the alleged copyrighting and registration by plaintiff of a mere piece of paper, with printed matter on it, and having no relation to any footwear of plaintiff, who is a box maker and not a dealer in shoes, is a mere nullity; that such copyright is not contemplated by any statute; that defendant was licensed by the Royal Shoe Store to copy this wrapped box and that the Royal Shoe Store is therefore the owner of the monopoly.

It does not seem necessary for me to spend much time on these defenses. They are simply those that are usually put forth, as an excuse for doing something which the law of fair dealing and unfair competition condemns. They are usually found in that sort of suit. In this case there has been a new and attractively wrapped box specially thought out and designed by a true artist and manufactured by plaintiff, by the various means already stated. Its worth and success is sufficiently shown by the desire to reproduce it without regard to the plaintiff's rights. Bleistein v. Donaldson Co., 188 U. S. 239, 23 S. Ct. 298, 47 L. Ed. 460.

Thus defendant, by a cheaper process and without going to the trouble, or by exercise of the artistic faculty such as that of Crowell, has profited, in violation of the exclusive right given to plaintiff.

The defendant, however, raises a final and much more serious objection. Its motion to dismiss this complaint is really based on this ground. This, indeed, is a serious question that is raised. The excellent brief of defendant's counsel is quite persuasive for his view.

This objection of defendant is that sec-tion 3 of the act of 1874, was repealed by section 63 of the act of 1909, first, because section 5 of 1909 (17 USCA § 5) exhausts all possible subjects of copyright with no exception in respect of labels. Second, because the act of 1909 (17 USCA §§ 1–62) provides that all copyrighting, without exception, is to be evidenced by a registration granted in the office of the Register of Copyrights and not in the Patent Office.

The Act of 1909 is now title 17, §§ 1 to 62. Code of Laws of the United States of America (17 USCA §§ 1–62), in force December 6, 1926. Section 63 of this Code is former section 3 of the Laws of 1874. This section therefore is now a part of the Code of Laws declared by Congress to be in force December 7, 1925, as enacted by Congress June 28, and approved June 30, 1926.

The committee on the revision of the laws of the House of Representatives, through its chairman, has stated in the preface to the Annotated Edition of this Code as follows:

"No new law is enacted, and no law repealed. It is prima facie the law. It is presumed to be the law" (title 17, USCA p. iii). He also mentions the immense amount of work and care expended by Congress, through its committee, in bringing this work to completion.

While, therefore, this Code is not intended to be other than a consolidation, and reasonably anticipates the finding of some errors and obsolete matter, nevertheless it does represent an exceedingly careful and constructive work, and the expression, by Congress, that the laws and sections thereof have not been repealed and are in force is not without effect.

The defendant now claims, or so I understand his argument must be, that this section 63 of title 17, USCA, has been repealed by the presence of sections 4, 5, and 10 of this same title and formerly the same sections of Law of 1909 because the latter sections are inconsistent with said section 63. That section 63 of title 17, USCA, was therefore not in force in 1925, for the reason that section 63 of the Laws of 1909, providing that all laws or parts of laws in conflict with the provisions of the act of 1909 were thereby repealed, had repealed section 3 of the Laws of 1874, which is now this section 63 of title 17.

The question is therefore: Is section 63 of title 17 USCA (or section 3 of law of 1874) in conflict with the other sections of title 17 (or sections of law of 1909)? Con-

flict means incompatibility. It indicates absolute inconsistency.

It must be conceded that there has been doubt expressed as to whether this was not so. Shortly after the passage of the act of 1909, the Commissioner of Patents expressed his opinion that "his power to register prints" (of the character such as now before me) "had been abrogated, and that further applicants must register in the office of the Register of Copyrights." This doubt has also been expressed by the Circuit Court of Appeals, Eighth Circuit. Fargo Co. v. Brechet Co. (1924) 295 F. 823.

On the other hand, Mr. Fowler, acting Attorney General of the United States, because of this opinion of the Commissioner of Patents, rendered an opinion, approved by Mr. Wickersham, Attorney General, dated December 22, 1909, in which he comes to the conclusion that the Act of March 4, 1909, did not relieve the Patent Office of its duty under section 3 of the Laws of 1874. That it was still required to register all such prints in the same manner as before. We have also the opinions of the Circuit Court of Appeals, Second Circuit (Jeweler's Co. v. Keystone Co., 281 F. 86, 26 A. L. R. 571), and of the District Court (Stecher v. Dunston, 233 F. 601), to the same effect.

There seems, therefore, to be no case presented, or which I can discover, where such question is flatly presented, and decided. There has been plainly, on the other hand, a natural reluctance to unsettle the law on this point. Thus in the Fargo Case, supra, both counsel assumed that section 3 of the Laws of 1874 was still in existence in 1924 in spite of the Law of 1909.

That learned court rested on this assumption, but expressed its doubt whether this was so, yet, it nevertheless did not hesitate to hold that certain sections of the Law of 1874 had been repealed, and that a portion of section 3 had likewise been repealed. It would seem to me that had it been as plain to that court that all of section 3 had been so repealed, it would not have hesitated to say so, simply because counsel had assumed it.

We have, therefore, a real doubt as to whether section 3 was entirely repealed. In other words, whether that portion, which states, "and the Commissioner of Patents is charged with the supervision and control of the entry or registry of (such) prints or labels, in conformity with the regulations provided by law as to copyright of prints," is not still the law.

It must be conceded that, for over a half of a century, this method of obtaining a copyright, in cases of these commercial prints, has been followed. That this has been followed for 19 years, since the enactment of the alleged repealing Law of 1909. This circumstance also must not be overlooked. The real controversy, therefore, is whether an applicant, such as plaintiff, must file his papers in the Patent Office or the Register of Copyright?

[2] Whether it is a commercial print, or a purely art print, there must be a copyright obtained. Higgins v. Keuffel, 140 U. S. 428, 11 S. Ct. 731, 35 L. Ed. 470. All prints must be so marked, if plaintiff is to obtain relief by suit.

Plaintiff has received a copyright and marked its prints. The defendant contends that this paper received by plaintiff is not a copyright, because he applied at the wrong place; that since 1909 there was only one place he could apply to obtain a real copyright, and that was at the office of the Register of Copyright.

It would seem to make little difference in whose office, in Washington, the various commercial labels gather dust. A copyright is an act by this government, granting a certain monopoly to a person who has exercised his ability.

[3] While such right depends upon the observance of the law creating it, it is a grant by the government, and, when given, carries with it a presumption that such law has been complied with.

[4] Under all the circumstances shown here it is the duty of this court, in the absence of a direct repeal, to reconcile, if possible, the various sections of this title. Section 10 of title 17 USCA states: "Such person may obtain registration of his claim to copyright by complying with the provisions of this title, including the deposit of copies, and upon such compliance the Register of Copyright shall issue to him the certificate provided for in section 55 of this title."

Section 63 of title 17 USCA provides: "And the Commissioner of Patents is charged with the supervision and the control of the entry or registry of such prints or labels (commercial prints), in conformity with the regulations provided by law as to copyright of prints." I have inserted the words (commercial prints), for there is no difficulty in understanding what prints are here referred to.

In both cases, therefore, there must be a copyright. In both cases the statutory law in regard thereto must be followed. In section 10, the person must comply with the law

and deposit copies. Under section 63, he must do the same. Under section 10, the Register of Copyright shall issue the certificate. Under section 63, the Commissioner of Patents shall do so. In both cases he obtains a copyright from the government.

It does not seem to me that this is necessarily forcing a reconciliation. On the contrary this is not unreasonable. It has been followed, without objection by parties, or by courts, for many years.

The Act of March 4, 1909, was entitled an act to amend and consolidate the acts respecting copyright. That consolidation has been followed by this last consolidation of 1926. There is, as I have said, no direct repeal of the entire section 3 of the Laws of 1874, by the Laws of 1909, nor by this Code of 1926. If these sections of title 17 can be so construed as to be reconcilable that construction should be taken. U. S. v. Greathouse, 166 U. S. 601, 17 S. Ct. 701, 41 L. Ed. 1130.

[5] Repeal by implication should be avoided, if possible. Wilmot v. Mudge, 103 U. S. 217, 26 L. Ed. 536; Frost v. Wenie, 157 U. S. 46, 15 S. Ct. 532, 39 L. Ed. 614; Benedict v. U. S. (D. C.) 271 F. 714; Maresca v. U. S. (C. C. A.) 277 F. 727. There is even said to be a presumption that a special statute is intended to remain in force in the absence of an express repeal by, or absolute incompatibility with, a general statute. Rodgers v. U. S., 185 U. S. 83, 22 S. Ct. 582, 46 L. Ed. 816; Petri v. Creelman Co., 199 U. S. 487, 26 S. Ct. 133, 50 L. Ed. 281.

It seems to me, therefore, it must be conceded that there was no direct repeal of section 63, title 17, and that the authorities, few in number as they are, have found no plain or absolute inconsistency. The repeal, therefore, if any, must rest on implication, and such, as I have said, is not favored. U. S. v. Healey, 160 U. S. 136, 16 S. Ct. 247, 40 L. Ed. 369.

[6] There is still a further reason why this court should not be zealous to find a repeal. The construction given to the statute of the act of 1909, so far as this affects said section 3 of the Laws of 1874, or, as I may put it, between section 63 of title 17 USCA, and the other sections of title 17, by the Attorney General of the United States, entirely aside from the reasoning in his opinion, has been followed for 19 years by the government, and by persons applying for copyrights. A contrary construction, therefore, under such circumstances, should not be found without cogent reasons. U. S. v. Moore, 95 U. S. 760, 24 L. Ed. 588; U. S.

v. Alabama Railway Co., 142 U. S. 615, 12 S. Ct. 306, 35 L. Ed. 1134; Findlay v. U. S. (C. C. A.) 225 F. 337; Illinois Surety Co. v. U. S. (C. C. A.) 215 F. 334.

In holding, as defendant desires, at this late date, that section 63 of title 17 is obsolete, and that all copyrights issued by the government, for such labels, since 1909, are invalid, due regard must be had for the business interest of thousands of persons, whose investment and property rights would thus be most seriously involved.

I agree with counsel for the plaintiff that this defendant has presented no cogent reason, "for now overruling the interpretation of the act of 1909, uniformly acted upon, for 19 years, by the Patent Office at Washington." The defendant seeks this construction simply because it has been overtaken in a bold attempt to violate the copyright of plaintiff. It therefore seeks to have that copyright of plaintiff declared to be a nullity by reason of this alleged repeal.

There is no proof before me that defendant, in doing what it did, relied upon, or was advised that, the law had been repealed. There is nothing of that sort in this case. On the contrary, there is some indication that it sought to give the impression that it had copyrighted the print under its own name.

[7, 8] In view of these doubts, the various acts of Congress, the acquiescence of courts and lawyers, together with the long-continued approval by the government, of the construction given by the Attorney General of the United States, it seems to me, that I should and hereby do decide, that so much of section 63 of title 17 USCA, as requires registering of commercial labels in the Patent Office, in accordance with the system long followed, has not as yet been repealed.

Congress, when convenient, may well take into consideration this doubt which has arisen, and which may frequently arise, and, by appropriate legislation, remove same, at the same time being able to protect those, who for almost a quarter of a century, have been following, and directed to follow, in good faith, the present system. The present codification, under title 17, is plainly not deemed sufficient to accomplish this. My views, therefore, require denial of the motion by defendant to dismiss on this ground.

[9] On the merits of the application of plaintiff, it having a copyright, it seems to me that the particular circumstances of this case properly require that it should be protected, pending a trial of the issues. American Co. v. Bensinger (C. C. A.) 282 F. 829; Trow Directory Co. v. U. S. Directory Co.

(C. C.) 122 F. 191; George T. Bisel Co. v. Bender (C. C.) 190 F. 205; Chappell v. Fields (C. C. A.) 210 F. 864.

Accordingly the motion to dismiss the bill is denied. Motion for preliminary injunction granted. The plaintiff will file a bond in the sum of $250.